IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Earnest E. Vaughn, Sr., | ) | C/A No. 2:12-2405-RMG-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Report and Recommendation** |
| | ) | |
| Deputy C.S. Whitfield; and | ) | |
| Deputy M.W. Hunnicutt, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff, proceeding pro se and in forma pauperis, brings this civil rights action, alleging deliberate indifference, misconduct in office, gross negligence, and violation of Plaintiff's rights under the Fourth, Sixth, and Fourteenth Amendments.  The original Complaint in this case (ECF No. 1) was filed, together with a Motion to Appoint Counsel (ECF No. 2), on August 16, 2012, while Plaintiff was a pretrial detainee in the Anderson County Detention Center, in Anderson, South Carolina.  Plaintiff filed a Notice of Change of Address (ECF No. 97), on June 6, 2013, advising the Court that he had been released from custody.  Plaintiff's Notice of Change of Address further advised that "Plaintiff will also state for the record that all charges the Defendants brought against the Plaintiff was dismissed on 6-3-2013 after 14 months of incarceration in the Anderson County Detention Center."  Notice of Change of Address, ECF No. 97, p. 1.

This matter is before the Court upon five motions: (a) Plaintiff's Motion for Preliminary Injunction (ECF No. 13), filed on September 25, 2012; (b) Plaintiff's Motion to Amend his Motion for Preliminary Injunction (ECF No. 37), filed on November 21, 2012; (c) Plaintiff's Motion for Summary Judgment (ECF No. 52), filed on January 3, 2013; (d)

Plaintiff's Motion in Limine (ECF No. 69), filed on January 16, 2013; and (e) Defendants'

Motion for Summary Judgment (ECF No. 82), filed on March 5, 2013.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and

Local Rule 73.02(B)(2)(e) (D.S.C.), all pretrial matters in cases involving *pro se* litigants are

referred to a United States Magistrate Judge for consideration.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### (*Overview*)

Plaintiff's original Complaint named as Defendants: the State of South Carolina, the

Anderson County Solicitor's Office, Assistant Solicitor Lauren Hogan, the Anderson County

Sheriff's Department, Deputy C.S. Whitfield, Deputy M.W. Hunnicutt, and Narcotics

Detective Brad McGuire. See ECF No. 1, p. 1. By Order dated September 13, 2012 (ECF

No. 7), Plaintiff's Motion to Appoint Counsel (ECF No. 2) was denied, and Plaintiff was

given a specific time frame in which to bring this case into proper form by: either paying the

filing fee or submitting a Motion for Leave to Proceed in forma pauperis, and submitting

proposed service documents for the Defendants. On September 25, 2012, Plaintiff filed

an Amended Complaint (ECF No. 10), a Motion for Leave to Proceed in forma pauperis

(ECF No. 11), and a Motion for Preliminary Injunction (ECF No. 13). Plaintiff's Amended

Complaint eliminated Brad McGuire as a named Defendant.[1]  Plaintiff filed additions to his

Amended Complaint, on October 3, 4, and 9, 2012, designated as a "Demand for Trial by

---

[1] Under the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), it is well settled that a timely-filed amended pleading supersedes the original pleading. See, e.g., Young v. City of Mount Ranier, 238 F. 3d 567, 573 (4th Cir. 2001). In order to preserve issues and give liberal effect to the pleadings, however, this Report includes the undersigned's review and consideration of Plaintiff's original Complaint and attachments, insofar as its allegations are relevant to the remaining Defendants.

Jury with additional Addendum," "Supplements," and "Additional Attachments," docketed at ECF Nos. 24, 25, 26, and 27.

By Order dated October 3, 2013 (ECF No. 18), Plaintiff's Motion for Leave to Proceed in forma pauperis (ECF No. 11) was granted, and the Amended Complaint and Motion for Preliminary Injunction were ordered to be served on Defendants Whitfield and Hunnicutt, only. A Report and Recommendation ("Report," ECF No. 21) was issued simultaneously, which recommended that Plaintiff's Amended Complaint be partially summarily dismissed, without prejudice and without issuance and service of process, as to Defendants the State of South Carolina, the Anderson County Sheriffs Department, the Anderson County Solicitor's Office, and Assistant Solicitor Lauren Hogan, on the basis of Eleventh Amendment immunity, lack of personhood under 42 U.S.C. § 1983,[2] and absolute prosecutorial immunity. On October 11, 2013, Plaintiff filed an Objection to the Report (ECF No. 28), arguing that Assistant Solicitor Hogan should not be dismissed. By Order dated February 5, 2013 (ECF No. 79), United States District Judge Richard M. Gergel adopted the Report in full and dismissed Plaintiff's claims against those four Defendants.

---

[2] Not itself a source of substantive rights, § 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by "person(s)" acting "under color of state law." *See Jennings v. Davis*, 476 F.2d 1271 (8th Cir. 1973). The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *See McKnight v. Rees*, 88 F.3d 417(6th Cir. 1996). To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: (1) individual defendant(s) deprived him of a federal right, and (2) did so under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *see Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980).

3

Defendants filed their Answer to Plaintiff's Amended Complaint (ECF No. 34) and Response in Opposition to Plaintiff's Motion for Preliminary Injunction (ECF No. 35), on November 20, 2012.

As noted above, Plaintiff filed his Motion for Summary Judgment (ECF No. 52) on January 3, 2013. Defendants filed their Motion for Summary Judgment (ECF No. 82) and Response in Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 83), on March 5, 2013. By Order dated March 6, 2013 (ECF No. 84), pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to Defendants' Motions. Plaintiff filed his Response in Opposition to Defendants' Motion for Summary Judgment (ECF No. 86). Plaintiff filed six additional responses to Defendants' Summary Judgment Motion, which are discussed in further detail, below. Defendants filed a Reply to Plaintiff's Response to Motion for Summary Judgment (ECF No. 90), on March 20, 2013.

The case record includes numerous other filings, as Plaintiff has frequently submitted various documents, many of which pertain to his state court criminal cases, but all of which the undersigned has carefully reviewed, and (to the degree that they are relevant to the disposition of the pending pre-trial motions) discussed hereinafter, in the context of the five motions.

### *(Plaintiff's Amended Complaint)*

Liberally construed, Plaintiff's Amended Complaint (ECF No. 10) essentially raises claims alleging that he was seized in violation of the Fourth Amendment, on two occasions, the first on April 1, 2011, by Defendant Whitfield, and the second on June 7, 2011, by

4

Defendant Hunnicutt.[3]  The Amended Complaint is captioned "Addendum to Complaint, Deliberate Indifference; Misconduct in Office, Gross Negligence; Violation 4th, 6th, 14th Amend. United States Constitution," and appears to have been amended primarily for the purpose of alleging a "failure to properly train" claim against the State of South Carolina, the Anderson County Solicitor's Office, and the Anderson County Sheriff's Department.  As noted above, those Defendants, and that claim, were previously summarily dismissed, without prejudice, along with Defendant Hogan and the claim against her.  Specifically, as to Defendant Whitmire, Plaintiff's Amended Complaint alleges as follows:

> On April 1st 2011 Deputy C.S Whitfield conducted an unlawful traffic stop of a vehicle in which the Plaintiff was a passenger along with 3 females.  Deputy Whitfield claimed that he thought someone threw a cigarette out of the vehicle in an attempt to justify the stop.  After the driver had produced a valid S.C. driver's license, proof of ownership and proof of insurance, for no justifiable reason, Deputy Whitfield retrieved his K-9 out of his vehicle and conducted a unlawful search of the vehicle and a unlawful detention of the Plaintiff and the 3 females.  Officer Whitfield then claimed to have seized approx. 4 grams of meth from the Plaintiff.  The Plaintiff has attempted to obtain documents (lab reports, analyst sheets, and chain of custody) relating to this arrest, and evidence from the Anderson Co. Sheriff's Dept. and the South Carolina Law Enforcement Division (SLED), who has stated that there are no records of such related to this arrest by Deputy Whitfield.  Deputy Whitfield violated the Plaintiff's rights of the 4th & 14th Amendments of the United States Constitution while working "under color" of the State and/or the Anderson Co. Sheriff's Dept. and did so in "bad faith" with the intention of depriving the Plaintiff of his right to freedom, causing Plaintiff to be illegally incarcerated from April 1st 2011 to May 3rd 2011 when the Plaintiff was

---

[3]  Section 1983 actions premised on alleged unlawful seizure, malicious prosecution, false arrest, and/or false imprisonment are analyzed as actions claiming unreasonable seizures in violation of the Fourth Amendment.  See, e.g., Brown v. Gilmore, 278 F.3d 362, 367-68 (4th Cir. 2002) (analyzing the plaintiff's allegations of false arrest as a claim of unreasonable seizure under the Fourth Amendment); Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001) (stating that claims of false arrest and false imprisonment "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment").

released on a $45,000.00 bond, and causing the Plaintiff to suffer from mental anguish and emotional distress.

ECF No. 10, p. 2-3. Specifically, as to Defendant Hunnicutt, Plaintiff's Amended Complaint alleges as follows:

On June 7th 2011, Deputy M.W. Hunnicutt conducted a traffic stop of a vehicle in which the Plaintiff was a passenger claiming that the driver shifted lanes w/o a turn signal. Deputy Hunnicutt detained the driver and obtained her driver's license, proof of ownership, and proof of insurance. At this time, Deputy Hunnicutt ordered the Plaintiff out of the vehicle. At this time, Deputy Hunnicutt claims to have found a baggie with a white substance on the ground that weighed .03 grams. The Plaintiff was patted down for weapons and placed under arrest. Deputy Hunnicutt then conducted a search of the vehicle and claimed to have found some pills in the console. He then arrested the driver. A back seat passenger was not arrested. The Plaintiff and driver was transported to the Anderson Co. Detention Center by Deputy Hunnicutt. Deputy Hunnicutt then further claimed that once the vehicle was moved another baggie of substance was found approx. 10 inches from where he found the first baggie that weighed 1.7 grams. The Plaintiff was charged with poss. w/i to dist. meth in an arrest warrant. Deputy Hunnicutt then asked the Plaintiff if he would sell drugs for him, in exchange of dropping the charge. This arrest and misconduct in office by Deputy Hunnicutt violated the Plaintiff's rights of the 4th and 14th Amendment rights of the United States Constitution and done in bad faith while working under color of the State of South Carolina and/or the Anderson Co. Sheriff's Dept. It also deprived the Plaintiff of his freedom from June 7th 2011 to August 1st 2011 and caused the Plaintiff to suffer from mental anguish and emotional distress. The charge was dismissed at the Plaintiff's preliminary hearing on August 1st 2011 due to the illegal detention and 4th Amendment violation.

ECF No. 10, p. 3-5. Plaintiff seeks monetary damages in the form of "one million dollars in actual damages and one million dollars in punitive damages from each defendant in each capacity." Id. at 7.

### (Motions for Summary Judgment)

As noted above, Plaintiff and Defendants have each moved for summary judgment (ECF Nos. 52 and 82). Defendants have submitted the following attachments to their Motion: 1) affidavit of Brad McGuire (ECF No. 82-2); (2) affidavit of Chris Whitfield (ECF

6

No. 82-3); affidavit of Michael Hunnicutt (ECF No. 91)[4]; exhibit of incident report of April 1, 2011 (ECF No. 82-5); and exhibit of incident report of June 7, 2011 (ECF No. 82-6). Plaintiff has submitted the following attachments to his Motion: (1) supporting documents, i.e. letter of June 23, 2012 to Plaintiff from SLED (ECF No. 52-1); (2) proposed Form USM-285 for Defendant Whitfield c/o attorney Steven Pruitt (ECF No. 52-2); (3) cover letter (ECF No. 52-3).

Additionally, Plaintiff has submitted six separate Responses, all with attachments of various length, to Defendants' Motion for Summary Judgment.  Plaintiff's first Response (ECF No. 86), entitled "Plaintiff's Response to Defendants' Document # 83 and Document # 82 Memorandum To Support Preliminary Injunction, Memorandum To Support Plaintiff's Motion for Summary Judgment In Favor of Plaintiff, Violations of 1st, 4th, 6th, 8th, 14th Amendments of The United States Constitution," includes an affidavit of Plaintiff ( ECF No. 86-3). A Supplement (ECF No. 87), entitled "Motion In Limine Plaintiff's Objection To Hearsay Testimony, 4th & 14th Amend. Viol. U.S Const," objects to affidavits attached to Defendants' Summary Judgment Motion on the basis that they constitute "hearsay testimony."  Plaintiff's "Objection To Hearsay Testimony 6th & 14th Amend. Viol. U.S. Const. In Defendants Docket # 82 & 83" (ECF No. 88), objects to the documents produced by Defendants in response to Plaintiff's Request to Produced, see ECF No. 88-1, p. 1. Plaintiff's "Conclusion To Response To Defendants' Motion for Summary Judgment" (ECF

---

[4] Defendant Hunnicutt's affidavit was initially filed as an unsworn statement (ECF No. 82-4) with an explanation that, because Hunnicutt had left the employment of the Anderson County Sheriff's Department and joined the United States Navy and reported to basic training in January 2013, he was initially unable to have his statement notarized.  On March 26, 2013, Defendants re-filed Hunnicutt's statement as a sworn affidavit (ECF No. 91), along with a certificate of its service upon Plaintiff.

No. 89) consists of argument against Defendants' arguments and affidavits.  Defendants filed a Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment (ECF No. 90), refuting Plaintiff's contention that Defendants have any involvement or control over Plaintiff's continued incarceration and alleged delay in trial, and reasserting that Defendant Hunnicutt had probable cause to arrest Plaintiff on June 7, 2011 based on his good faith belief in the information provided to him by the confidential informant.  Defendants also provided a copy of Defendant Hunnicutt's sworn affidavit (ECF No. 91).  Plaintiff filed a "Response to Defendants' Document # 90 and Memorandum To Plaintiff's Motion For Preliminary Injunction and Memorandum To Plaintiff's Response to Defendants' Motion for Summary Judgment" (ECF No. 92), in which he reiterates his arguments and assertions that Defendants lacked probable cause to seize, search, and arrest him, and to which he attaches copies of correspondence and pro se motions concerning his state court criminal charges, the suspension from law practice of his appointed defense counsel, and efforts made on his behalf to obtain new defense counsel.  Finally, Plaintiff filed an "Objection and Statement of Facts" (ECF No. 93), objecting to Defendants' assertion that Plaintiff's charges had not yet been adjudicated in Plaintiff's favor.

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the

nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

In deciding a summary judgment motion, the court must look beyond the pleadings and determine whether there is a genuine need for trial. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-53 (1986). If the defendant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. Anderson, 477 U.S. at 248. An issue of fact concerns "material" facts only if establishment of the fact might affect the outcome of the lawsuit under governing substantive law. Id. A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. Anderson, 477 U.S. at 251.

## DISCUSSION

9

**Defendants' Motion for Summary Judgment**

**I. The June 7, 2011 Search, Seizure, and Arrest**

As noted above, Defendants submitted the affidavits of Brad McGuire and Defendant Hunnicut. Detective McGuire stated that on June 7, 2011, he received a call from a confidential informant who stated that the Plaintiff had an "8 ball", or 3.55 grams, of methamphetamine that he wanted to sell. The confidential informant told him where the Plaintiff was located and the type of vehicle in which he would be traveling. The confidential informant, Ronnie Stancil, was also a passenger in the vehicle. Mr. Stancil was with the Plaintiff and asked Detective McGuire if he wanted to buy the Methamphetamine from the Plaintiff. Detective McGuire stated he had used the confidential informant before and he had always proven to be very reliable. He agreed to purchase the Methamphetamine from Plaintiff and they negotiated the price and set a place to meet. (Aff. McGuire, ECF No. 82-2, p. 1.).

Detective McGuire then found out who was working in the area and contacted Defendant Hunnicutt. Detective McGuire called Defendant Hunnicutt and informed him that though he had probable cause to stop the vehicle, he wanted to determine if there was another way to obtain probable cause to stop the vehicle, so that he did not expose the identify of the confidential informant. According to the incident report, after speaking with Detective McGuire, Defendant Hunnicutt was on the lookout for and made visual contact with the vehicle. In the incident report, Defendant Hunnicutt stated that he observed the vehicle make several lane changes without using a signal. This was a traffic violation which gave additional probable cause to stop the vehicle. (Aff. McGuire and Hunnicutt; Id., p. 1-2, ECF No. 82-4, p. 1-2).

10

Defendant Hunnicutt initiated a traffic stop of the vehicle, which was being driven by Erin Duncan. Officer Dunn was also present at the scene. Plaintiff was a passenger in the vehicle, as was Ronnie Stancil, the confidential informant. According to the incident report, when Defendant Hunnicutt approached the vehicle, he observed Plaintiff and Ms. Duncan appear to be very nervous, and for safety reasons he had Plaintiff exit the vehicle. When Plaintiff stepped out of the vehicle, Defendant Hunnicutt observed a clear bag containing a white substance fall to the ground. (Aff. McGuire and Hunnicutt, ECF No. 82, p. 2, ECF No. 82-4, p. 2).

Defendant Hunnicutt stated that, after everyone had exited the vehicle, he placed Mr. Stancil in handcuffs, stating that he had a warrant with the City of Anderson and would be taken to the Anderson City Jail. This was done so that Plaintiff would not become suspicious if Mr. Stancil was not brought to the Anderson County Detention Center. He then placed Mr. Stancil in his patrol vehicle and acted as if he was talking to him about the outstanding warrant, but Mr. Stancil was actually providing information and informed Defendant Hunnicutt that Plaintiff had the Methamphetamine on his person. Both Defendant Hunnicutt and Detective McGuire stated that they are now identifying the confidential informant because Plaintiff has previously written a letter to Sheriff Skipper in which he identified Mr. Stancil as the confidential informant. (Aff. Hunnicutt, ECF No. 82-4, p. 2).

Defendant Hunnicutt stated that, after speaking with Mr. Stancil, he spoke with Plaintiff and Ms. Duncan, and they both appeared extremely nervous and anxious. He had completed a patdown or <u>Terry</u> search of Plaintiff and Ms. Duncan, and Plaintiff denied that there were any drugs or improper items in the vehicle. Based on the information from the

11

confidential informant, Hunnicutt believed that Plaintiff had more Methamphetamine in his possession than had been in the bag that Hunnicutt observed fall to the ground, as the bag clearly did not contain 3.55 grams.  Hunnicutt stated that they separated Plaintiff and Ms. Duncan at that point, and initially Ms. Duncan denied any wrongdoing and denied that there were any drugs present, but then stated that Plaintiff had the Methamphetamine on his person.  Defendant Hunnicutt also asked for Ms. Duncan's consent to search the vehicle and she consented to the search of the vehicle.  (Aff. Hunnicutt, ECF No. 82-4, p 2-3).

Defendant Hunnicutt then went to where he observed the bag fall when Plaintiff exited the vehicle and picked it up.  He conducted a search of the vehicle and did not find any Methamphetamine, but found several pills in a Nexium bottle and Ms. Duncan admitted the pills belonged to her and that she did not have a prescription for these medications.[5] Defendant Hunnicutt stated that after searching the vehicle, he did a field test and confirmed the substance in the bag was Methamphetamine.  At that point, he placed Plaintiff in handcuffs and read him his Miranda rights.  After Plaintiff was placed under arrest, Hunnicutt did a more detailed search, but did not find any additional items. Hubbicutt stated that, though he had only found a small amount of Methamphetamine at that time,

---

[5] The undersigned takes judicial notice of the fact that the Anderson County Tenth Judicial Circuit Public Index shows that three arrest warrants for drugs/possession of controlled substance in Sched. I-V were issued against Erin Elaine Duncan, on June 7, 2011, resulting in indictments (nos. 2012-GS-40-307, 308, and 309), to which Ms. Duncan pled guilty, on February 23, 2012.  See http://publicindex.sccourts.org/Anderson/PublicIndex/PISearch.aspx (last visited July 19, 2013); Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) (a federal court may take notice of proceedings in other courts if those proceedings have a direct relation to matters at issue) (citing St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979)).

possession of Methamphetamine in any quantity is a felony. (Aff. Hunnicutt. ECF No. 82-4, p. 3).

Defendant Hunnicutt transported Plaintiff to the Detention Center, and Plaintiff continued to deny that he had any methamphetamine or other improper substance. Defendant Hunnicutt questioned Plaintiff multiple times about whether he had eaten some of the Methamphetamine, because he was sweating profusely and appeared to be exceedingly nervous. Defendant Hunnicutt stated he was concerned at that point about Plaintiff's safety if he had eaten any of the Methamphetamine, but Plaintiff continued to deny that he had eaten any of the substance, or ever had any in his possession at any time. (Aff. Hunnicutt, Id.).

Defendant Hunnicutt stated he had not yet left the Detention Center when he received a call from Deputy Dunn stating that, when the wrecker began towing the vehicle, he found another bag less than a foot away from where the other bag had been found and in the same spot where Plaintiff was standing. Defendant Hunnicutt left the Detention Center and went to the evidence area at the Sheriff's Department. Deputy Dunn had brought the second bag he found and he tested the contents and confirmed it was Methamphetamine. Defendant Hunnicutt also stated that the bag was the same type and the Methamphetamine appeared to be of the same type and consistency as the bag Plaintiff dropped when he exited the vehicle. The second bag contained approximately 1.7 grams of Methamphetamine. (Aff. Hunnicutt, ECF No. 82-4, p. 3-4.).

After receiving and testing the second bag, Defendant Hunnicutt obtained a warrant for the Plaintiff to be charged with possession with intent to distribute Methamphetamine. Hunnicutt stated that he did not initially realize that the Judge on the initial warrant put

13

manufacturing Methamphetamine, instead of possession of Methamphetamine, and it is his understanding that this charge was dismissed at a preliminary hearing. Hunnicutt was not present at the preliminary hearing, but stated it is his understanding that, after the charge for manufacturing methamphetamine was dismissed, the Solicitor's Office did a direct indictment against Plaintiff, charging him with possession of Methamphetamine with intent to distribute. Defendant Hunnicutt had no involvement with this charge and was not aware that this had occurred until after this lawsuit was filed. Defendant Hunnicutt also stated he had no involvement with the charges against the Plaintiff after obtaining the initial warrant. Defendant Hunnicutt left the employment of the Sheriff's Department on December 7, 2012, and entered the United States Navy in January of 2013. He stated that he does not have any involvement with, or control over, what occurs with the charges against the Plaintiff. (Aff. Hunnicutt, ECF No. 82-4, p. 4).

Defendants argue that Plaintiff has failed to state a constitutional violation in relation to Defendant Hunnicutt's arrest of Plaintiff on June 7, 2011. Defendant Hunnicutt had probable cause to initiate a traffic stop, based on the information provided to Detective McGuire by the confidential informant and, in addition, because of the traffic violation. Defendant Hunnicutt stated that he observed, when the vehicle in which Plaintiff was a passenger changed lanes several times without signaling. This was a traffic violation giving Defendant Hunnicutt probable cause to initiate a traffic stop on this basis alone.[6] A police officer may stop a vehicle when the officer has probable cause that a traffic violation has occurred. Further, the temporary detention of an individual in the course of a routine traffic

---

[6] See S.C. Code § 56-5-2150.

stop is reasonable per se, when probable cause exists to believe that a traffic violation has occurred. State v. Tindall, 388 S.C. 518, 698 S.E.2d 203 (2010); see also Arizona v. Johnson, 555 U.S. 323, 326 (2009) ("[I]n a traffic-stop setting, the first Terry condition – a lawful investigatory stop – is met whenever it is lawful for the police to detain an automobile and its occupants pending inquiry into a vehicular violation."). Defendants argues that, based on the above, the initial traffic stop of the vehicle in which Plaintiff was a passenger was appropriate.

Defendants further argue that, once an individual has been detained for a traffic violation, the officer may order the driver out the vehicle. Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977). Once the individuals are outside of the stopped vehicle, the driver may be patted down for weapons if the officer reasonably concludes that the driver "might be armed and presently dangerous." Johnson, 555 U.S. at 331 (quoting Mimms, 434 U.S. at 112). These procedures also apply to passengers. Johnson, 555 U.S. at 331; see also Maryland v. Wilson, 519 U.S. 408, 415 (1997). The South Carolina Supreme Court has held that, where an officer has reasonable suspicion that drugs are present in a lawfully stopped vehicle, there is an appropriate level of suspicion of criminal activity and apprehension of danger to justify a frisk of both the driver and the passenger. State v. Banda, 371 S.C. 245, 253, 639 S.E.2d 36, 40 (2006). Therefore, in the June 7, 2011 situation, Defendants argue that it was reasonable for Defendant Hunnicutt to order the individuals out of the vehicle. As he stated in his affidavit, Plaintiff and Ms. Duncan appeared to be extremely nervous and he had them exit the vehicle and conducted a Terry search for safety reasons. Furthermore, Defendants contend, there was clearly a reasonable suspicion that drugs were present in the vehicle, because the confidential

15

informant stated to Detective McGuire, and subsequently to Defendant Hunnicutt, that the Plaintiff had drugs in his possession.

Defendants argue that Plaintiff has failed to show that the traffic stop, or the actions of Defendant Hunnicutt, were improper in any way. There was probable cause to initiate a traffic stop, first, on the basis of the information from the confidential informant, and second, due to the driver of the vehicle changing lanes multiple times without using a traffic signal. Defendants argue that Plaintiff also fails to state a constitutional violation for having him step out of the vehicle. An individual may be required to exit the vehicle when stopped for a traffic violation. Finally, Defendants assert that the charge against the Plaintiff was based on the bag of Methamphetamine that Defendant Hunnicutt observed fall to the ground when the Plaintiff stepped out of the vehicle, thus Plaintiff has failed to show any type of constitutional violation, and his action against Defendant Hunnicutt should be dismissed as a matter of law.

### II. The April 1, 2011 Search, Seizure, and Arrest

As noted above, Defendants submitted the affidavit of Defendant Whitfield, who stated that, on April 1, 2011, he was employed as a deputy with the Sheriff's Department, but has since left employment with the Sheriff's Department to take another job. He stated that, as part of his duties as a deputy, he was on patrol in the Homeland Park area on April 1, 2011. He observed someone throw a cigarette out of the window of the vehicle directly in front of him. He stated that he conducted a traffic stop of the vehicle and spoke initially with the driver of the vehicle, Presley Epps. Whitfield advised Ms. Epps of the reason he had stopped the vehicle and requested her driver's license and registration. He stated that he observed there were three passengers in the vehicle and questioned them as to who

16

threw the cigarette out of the window, but they all denied any knowledge of it.  Whitfield stated that he did note all of the occupants, except the driver, had a new cigarette in their hands. (Aff. Whitfield, ECF No. 82, p. 1-2).

Defendant Whitfield stated that, at that point, he returned to his vehicle to conduct his enforcement action and Deputy Surratt arrived on the scene.  Whitfield returned to the Epps vehicle and requested that the driver step out, so that Whitfield could explain his enforcement action, and was still waiting at that time for warrant checks to come back on the occupants of the vehicle. While waiting, Whitfield stated, he asked Ms. Epps what they were doing that evening and she stated that she had taken the passenger in the front seat to a house to get a part for a tape player and that he had gone into the house and stayed for a brief moment, but did not have any type of part for a radio.  Whitfield was then advised by dispatch that the back seat passenger had an active warrant from Abbeville County. (Aff. Whitfield, ECF No. 82-3, p. 2).

Defendant Whitfield stated that Deputy Surratt told him that one of the passengers in the back seat was acting extremely nervous and that his hands were shaking.  He then advised the driver that he was going to deploy his narcotic K-9 on the vehicle.  Whitfield stated that he was the K-9 officer and had the animal, Albi, with him, so that he did not need to leave the scene and did not extend the traffic stop.  Whitfield deployed Albi on the vehicle and Albi gave a positive indication of the odor of illegal narcotics, when he got to the passenger door.  Whitfield stated that he returned Albi to the patrol unit and explained to Ms. Epps what he had done.  Whitfield advised her that, due to the indication from Albi, he would be searching her vehicle.  He removed the passenger sitting where Albi had

17

alerted first and had him step to the back of the car with another officer who arrived at scene. This individual was later identified as Plaintiff, Earnest Vaughn. (Aff. Whitfield, <u>Id</u>.).

Whitfield stated that the other officers at the scene questioned Plaintiff while Whitfield conducted a search of the vehicle. During his search of the vehicle, he located six boxes of Sudafed and camping fuel. Both of these items are used in the manufacture of Methamphetamine. He also located a bottle with a brown liquid in it and some type of substance at the bottom of the bottle, in the trunk of the vehicle. Whitfield stated that he notified Detective McGuire who came to the scene and tested the substance found at the bottom of the bottle, and determined that it was not Methamphetamine. Whitfield stated that it is his understanding that Plaintiff was questioned and searched by other officers, and they located several syringes, coffee filters which had lye in them, and six individual bags containing a substance which field-tested positive for Methamphetamine. Based on this, Whitfield obtained a warrant for possession with intent to distribute Methamphetamine. Defendant Whitfield stated that he had no involvement with the charges against Plaintiff after obtaining the initial warrant, and that he has left employment with the Sheriff's Department and does not have any involvement with or control over what occurs with the charges against the Plaintiff. (Aff. Whitfield, McGuire, ECF No. 82-3, p. 3, ECF No, 82-2, p. 2-3).

Defendants argue that Plaintiff, again, has failed to show any improper action by Defendant Whitfield. Defendants assert that Whitfield had probable cause to stop the vehicle in which Plaintiff was a passenger because he observed someone throw a cigarette

out of the window of the vehicle.[7]  See Tindall, 698 S.E.2d at 203 (the decision to stop the vehicle is reasonable per se when a traffic violation has occurred); see also Johnson, 555 U.S at 326.  Whitfield ran a check for outstanding warrants on the occupants of the vehicle and based on the actions of one of the back seat passengers, i.e. extremely nervous behavior and shaking hands, Whitfield deployed his narcotic K-9 on the vehicle.  He was the K-9 officer so the dog was with him and deploying the dog did not extend the traffic stop.  See State v. Wallace, 392 S.C. 47, 707 S.E.2d 451 (Ct. App. 2011) (finding it is permissible for an officer to conduct a sniff by a drug dog outside a lawfully stopped vehicle provided such action does not unreasonably extend the stop).  After the dog alerted, Whitfield had Plaintiff exit the vehicle and he searched the vehicle, while other officers searched Plaintiff.  The law is also clear that once detained for a traffic violation, an officer may order the driver out the vehicle.  Mimms, 434 U.S. 111.  These procedures also apply to passengers.  Johnson, 555 U.S. at 331; Wilson, 519 U.S.at 415.  Defendant Whitfield stated that he was not directly involved in the search of Plaintiff, but initiated the charges since he was the officer who made the initial stop.

Defendants assert that, based on the facts and law set forth above, Whitfield did not violate Plaintiff's constitutional rights.  Defendants contend that Plaintiff has failed to satisfy the necessary element of a malicious prosecution claim that the prior proceeding terminated favorably to the Plaintiff.[8]  Defendants maintain that Plaintiff's rights were not

---

[7]  See S.C. Code §§ 16-11-700(A), (G).

[8]  As noted above, Defendants' Motion for Summary Judgment was filed on March 5, 2013, prior to the filing of Plaintiff's Notice of Change of Address, in which Plaintiff alleges that the charges were dismissed on June 3, 2013.

violated, but in any event Whitfield did not conduct the actual search of the Plaintiff and cannot be held responsible for the actions of others.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) (holding that in order to prevail, a plaintiff must prove that the specific prison official was deliberately indifferent to the requirements of the Eighth Amendment and that this indifference was the proximate cause of the Plaintiff's right to be free from cruel and unusual punishment).

**Plaintiff's Motion for Summary Judgment**

Plaintiff's Motion for Summary Judgment (ECF No. 52) argues that the incident report indicates that Deputy Whitfield had no reason for conducting the traffic stop, and that the K-9 alerted to the vehicle, not specifically to Plaintiff, which did not give Deputy Whitfield any type reasonable suspicion for detaining Plaintiff.  Plaintiff asserts that Deputy Whitfield does not state a legal reason for extending the investigation beyond the initial traffic stop. Plaintiff argues that, while Deputy Whitfield states that narcotics were found on Plaintiff, and that all items of evidentiary value were logged into evidence, Plaintiff has received "a letter from SLED dated 6-23-2012 that verifies that a thorough search of the data base revealed nothing under the name Earnest E. Vaughn, Sr. For 2011."  ECF No. 52, p. 2. Plaintiff argues that "the evidence supports the fact that these constitutional violations were committed in bad faith, maliciously and sadistically for the purpose of causing harm mentally and emotionally in an effort to deprive the Plaintiff of his freedom, therefore violating due process and denying the Plaintiff equal protection of the law."  ECF No. 52, p. 3.  Plaintiff alleges that Deputy Whitfield "intentionally makes himself unavailable for service of process in this case in an effort to obstruct justice."  ECF No. 52, p. 4.  Plaintiff also asks that "the case go forward against defendant Hunnicutt."  Id.  Plaintiff renews his

objection to the Report and Recommendation and "ask[s] that Ass. Sol. Hogan be kept on the case as a defendant in her official capacity and individual capacity for the purpose of granting the preliminary injunction against her." ECF No. 52, p. 5. Plaintiff asks the Court to "issue an order to compel the defendants to adjudicate the unlawful incarceration that the Plaintiff has faced and suffered from mentally and emotionally for the past 9 months due to bench warrants for failure to appear on these charges that are in violation of the Plaintiff's 4th & 14th Amendment rights of the United States Constitution." Id.

Defendants' Response notes that they "recently moved to extend the time to file dispositive motions due to the fact that Defendant Hunnicutt joined the United States Navy and left for basic training," and the Court granted the request for an extension. Defendants note that Plaintiff's Motion is dated December 31, 2012 and was filed on January 4, 2013. Thereafter, on January 9, 2013, Defendants' counsel agreed to accept service of process on behalf of Defendant Whitfield. ECF No. 65, p. 1.

Plaintiff filed a Declaration in Support of his Motion (ECF No. 67) in the form of a Memorandum, and a Reply (ECF No. 73) to Defendants' Response, stating that he does not oppose the extension of time for filing dispositive motions. In ECF No. 67, Plaintiff argues: On August 30th 2011, Defendant Hunnicutt and the prosecutor Lauren Hogan appeared before the Anderson Co. Grand Jury and unlawfully obtained a direct indictment using the incident report relating to the Plaintiff's arrest by Defendant Hunnicutt. This is a further denial of due process and it violates the Plaintiff's 14th Amendment rights.[9]

---

[9] It is well-settled that a complaint cannot be amended by a plaintiff's brief in opposition to a motion to dismiss or a motion for summary judgment. See Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x. 556, 563 (4th Cir. 2008) (citing Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff

Plaintiff also filed another Declaration (ECF No. 77) in the form of an addendum to his Motion In Limine and a Memorandum to his Motion for Summary Judgment. In ECF No. 77 Plaintiff argues:

> Probable cause must be incident to the arrest. Not follow the arrest. . . . It appears that the Defendants are attempting to alter the lack of probable cause or the lack of reasonable suspicion for defendant Hunnicutt's detention of the Plaintiff prior to the arrest on 6-7-2011. Defendant Hunnicutt and Whitfield clearly stated that the detention of the Plaintiff was either done for officer's safety and the pat down of the Plaintiff was done for weapons. They never gave any reason for suspecting that the Plaintiff was armed and dangerous. The 4th Amendment clearly forbids the use of evidence claimed to have been seized in such unlawful detentions and searches.

ECF No. 77, p. 2. Plaintiff attached to ECF No. 77, a copy of a supplementary report concerning the April 1, 2011 incident:

> Supplementary Report, dated 08/09/12:
>
> The original warrant regarding the above arrest was dismissed at the preliminary hearing on August 1, 2011.
>
> An expungement order was received regarding this charge on or about November 20, 2011.
>
> Per expungement order all records pertaining to the subject were expunged.
>
> The subject has contacted the records division twice, wanting a copy of his arrest for June 7, 2011 and was advised that we were unable to locate an arrest for that date (this is due to expungement)
>
> After receiving a letter from the subject on August 8, 2012 with further information to search on, I was able to locate the incident report in question.

---

may not amend her complaint through argument in a brief opposing summary judgment.")); Sheppard v. The LPA Group, Inc., C/A No. 2:07-564, 2008 U.S. Dist. LEXIS 11724, 2008 WL 444685, at *3 (D.S.C. Feb. 15, 2008) (citing Mylan Labs., Inc. v. Akzo, N.V., 770 F. Supp. 1053, 1068 (D. Md. 1991)). Therefore, Plaintiff's new claims of violation of his First Amendment right to access the courts, his Sixth Amendment right to speedy trial, and his Fourteenth Amendment right to due process and equal protection with respect to the trial of his criminal case in state court are inapposite here.

> Since the subject was incarcerated regarding a direct indictment, I was able to locate that information and have since added the subject's information back into the incident report and provided him with a copy of said report. I did not advise him that since his case was still active he would be receiving only the basic incident report.

ECF No. 77-1, p. 1.

Defendants' Response to Plaintiff's Motion for Summary Judgment (ECF No. 83) refers to their own Motion for Summary Judgment which discusses in detail their position and defenses. "With regard to Plaintiff's statement that he contacted SLED and they have no records or evidence for 2011, Defendants state that "SLED was not involved in the arrest of the Plaintiff, but these arrests were by the Anderson County Sheriff's office and SLED would not have records related to these arrests." ECF No. 83, p. 2.

**Defendants' Summary Judgment Motion Should be Granted as to Plaintiff's Illegal Search and Seizure Claims**

Plaintiff's contention is that the April 1, 2011 traffic stop by Defendant Whitfield and the June 7, 2011 traffic stop by Defendant Hunnicutt were without probable cause and, consequently, that Plaintiff's searches, seizures, and arrests were unlawful, on both occasions. A traffic stop is constitutionally reasonable when a police officer has either "probable cause to believe that a traffic violation has occurred[,]" Whren v. United States, 517 U.S. 806, 810 (1996), or a "reasonable articulable suspicion that criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968) (quotation marks omitted).

In determining probable cause, the issue is not whether the diver of the vehicle, the Plaintiff, or another passenger actually threw a cigarette out of the window, it is whether Defendant Whitfield reasonably believed that an occupant of the vehicle threw out a cigarette. See United States v. Muriel, 418 F.3d 720, 724 (7th Cir. 2005) (holding courts

"need only inquire whether the officer had probable cause to believe that a traffic violation

occurred, not whether [the driver] actually was tailgating."); United States v. Smith, 80 F.3d

215, 219 (7th Cir.1996) ( "whether [the motorist] would have been convicted of a violation

in a traffic court" is not the issue).  Thus, Plaintiff's claim that no one in the vehicle actually

violated the traffic regulation prohibiting littering cannot establish that Defendant Whitfield

lacked probable cause to stop the vehicle.   Rather, Plaintiff must go further and

demonstrate that Defendant Whitfield's belief that a violation occurred was not only

incorrect, but was objectively unreasonable." Cullins v. Sumter City Police Dep't, 2011 U.S.

Dist. LEXIS 8056 adopted by, summary judgment granted by, dismissed by 2011 U.S. Dist.

LEXIS 8107 (D.S.C., Jan. 27, 2011) (citing Retzlaff v. City of Cumberland, 2010 U.S. Dist.

LEXIS 42957, 2010 WL 1780338 * 5 (W.D.Wis. 2010)).  This Plaintiff has failed to do.

Plaintiff has not alleged any facts supporting his underlying assertion that probable cause

was lacking, which is a legal conclusion.[10]  Plaintiff has simply denied that a cigarette was

thrown from the vehicle.  Such a conclusory allegation is insufficient.  See Erikson v.

Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (affirming

the Rule 12(b)(6) dismissal of a § 1983 Fourth Amendment "malicious prosecution" claim

where "beyond the conclusory allegation in his complaint that no probable cause existed,

---

[10]  In ruling on a motion for summary judgment, "'the nonmoving party's evidence
is to be believed, and all justifiable inferences are to be drawn in that party's favor.'"
The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576
(4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).
However, the court "need not accept the legal conclusions drawn from the facts," nor
need it "accept as true unwarranted inferences, unreasonable conclusions, or
arguments."  Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006); see also
Walker v. Prince George's Cnty., 575 F.3d 426, 431 (4th Cir. 2009) (citing Semple v.
City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999)).

plaintiff has not alleged any specific facts showing there was a lack of probable cause for his arrest and prosecution").

To determine the existence of probable cause, a court "examine[s] the totality of the circumstances known to the officer at the time of the arrest." Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996) (citations omitted). "Probable cause exists when the facts and circumstances known to the officer 'would warrant the belief of a prudent person that the arrestee had committed or was committing an offense.'" Id. (citations omitted). See also Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992) (two factors govern the determination of probable cause in any situation: "the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct."). "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004).

The phrase "the contours of the offense thought to be committed" means that a police officer's mistake of law cannot support probable cause to conduct a traffic stop. Probable cause only exists when an officer has a "reasonable" belief that a law has been broken. Muriel, 418 F.3d at 724. Law enforcement officials have a certain degree of leeway to conduct searches and seizures, but "the flip side of that leeway is that the legal justification must be objectively grounded." Miller, 146 F.3d at 279. An officer cannot have a reasonable belief that a violation of the law occurred when the acts to which an officer points as supporting probable cause are not prohibited by law.

When an officer makes a stop based on a mistake of fact, the court asks only whether the mistake was reasonable. The circumstances in a "mistake of law" case are

contrasted with the circumstances in a "mistake of fact" case.  In the instance of a mistake of law, even if the arrestee acted exactly as the officer believed, the arrestee's actions were not a violation of a traffic law.  In a mistake of fact case, if the mistake of fact was reasonable, based on the totality of the circumstances, i.e. if the facts and circumstances mistakenly believed by the officer 'would warrant the belief of a prudent person that the arrestee had committed or was committing an offense,' then the arrest was  based on probable cause.  See Muriel, 418 F.3d 720; United States v. Cashman, 216 F.3d 582 (7th Cir. 2000); United States v. Dexter, 165 F.3d 1120 (7th Cir. 1999).  It is in this sense that the relevant inquiry for probable cause or reasonable suspicion is not whether the defendant was actually guilty of violating the law, but whether the police had a reasonable belief that the defendant was committing an offense, based on the officer's correct reliance on an actual state law when deciding to stop the defendant.  This standard requiring only a "reasonable ground for belief of guilt" requires less of a showing than does the formal preponderance-of-the-evidence standard.  See Illinois v. Gates, 462 U.S. 213, 235 (1983) ("Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision," because probable cause is "only the probability, and not a prima facie showing, of criminal activity"); see also United States v. Humphries, 372 F.3d 653, 660 (4th Cir. 2004) ("[T]he probable-cause standard does not require that the officer's belief be more likely true than false").

In Plaintiff's Sur Reply to Reply to Response to Defendants' Motion for Summary Judgment (ECF No. 92), Plaintiff alleges "Defendant Whitfield used this sham misdemeanor allegation (which is illegal) to stop the vehicle to get to the Plaintiff to search.  Defendant

Whitfield never wrote anyone a ticket because the alleged violation never occurred." ECF No. 92, p. 2. Likewise, Plaintiff alleges "Defendant Hunnicutt's allegation that the driver of the vehicle he stopped on 6-7-2011 failed to use a turn signal when changing lanes [is a] sham misdemeanor allegation . . . used to gain access to search the Plaintiff who was a passenger in the vehicle. Defendant Hunnicutt was predisposed in stopping this vehicle even before he gained view of the vehicle. Defendant Hunnicutt never charged the driver with a traffic offense." Id.[11]

As noted above, "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren, 517 U.S. at 810. "Any ulterior motive [that] a police officer may have for making the traffic stop is irrelevant." United States v. Digiovanni, 650 F.3d 498, 506 (4th Cir. 1992) (citing Whren, 517 U.S. at 810). Under the objective test adopted by the Fourth Circuit, when a police officer observes unlawful conduct, such as a traffic offense, the police officer's subsequent traffic stop is reasonable for purposes of analysis under the Fourth Amendment; this is true regardless of any subjective motives or suspicions that the police officer may have regarding unrelated criminal activity by the occupants of the vehicle. United States v. Hassan El, 5 F.3d 726, 730-31 (4th Cir. 1993).

"The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." Michigan v. DeFillippo, 443 U.S. 31,

---

[11]  As previously noted, the driver of the vehicle involved in the June 7, 2011 incident, Erin Duncan, was charged with and pleaded guilty to three counts of possession of a controlled substance.

36 (1979).  Moreover, "[t]he Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted — indeed, for every suspect released." Baker v. McCollan, 443 U.S. 137, 145 (1979). Further, the probable cause standard is lower than the standard to convict.  "Probable cause requires only 'a reasonable ground for belief of guilt,'" Brinegar v. United States, 338 U.S. 160, 175 (1949) (quoting McCarthy v. De Armit, 99 Pa. 63, 69 (1881)), but to convict a defendant, the State must prove the defendant's guilt beyond a reasonable doubt, see, e.g., United States v. Booker, 543 U.S. 220, 230 (2005) (quoting In re Winship, 397 U.S. 358, 364 (1970)).  To be sure, probable cause requires more than bare suspicion, but it is a flexible standard that need not amount to evidence necessary to convict.  United States v. Ortiz, 669 F.3d 439, 444 (4th Cir. Feb. 27, 2012).  Therefore, the fact that Ms. Epps, the driver of the vehicle involved in the April 1, 2011 stop was apparently not charged or convicted of the traffic offense, and the fact that Plaintiff's charges were dismissed, does not mean that Defendants Whitfield and Hunnicutt did not have probable cause to arrest the drivers in each incident and to arrest Plaintiff in each incident.

The reasonableness of a traffic stop is analyzed under a two prong analysis. See Terry.  The court must analyze whether the police officer's conduct was justified at the time of the stop and whether the subsequent actions taken by the police officer were reasonably related in scope to the circumstances that justified the stop.  A police officer's observation of a traffic violation provides sufficient justification for detainment of "the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop." United States v. Branch, 537 F.3d at 335 (internal citations omitted).

A lawful traffic stop justifies detaining the vehicle's occupants for the time necessary to request a driver's license and vehicle registration, run a computer check, and issue a citation. United States v. Digiovanni, 650 F.3d 498, 507 (4th Cir. 2011). During the stop, an officer may briefly inquire into unrelated matters, but may not definitively abandon the prosecution of the traffic stop and embark on another sustained course of investigation absent additional justification. Id. at 507-08. The officer may take other actions that do not constitute a search within the meaning of the Fourth Amendment, such as conducting a perimeter canine sniff of the vehicle, Illinois v. Caballes, 543 U.S. 405, 409 (2005), but again only "so long as those inquiries [or other actions] do not measurably extend the duration of the stop." Arizona v. Johnson, 555 U.S. 323, 333 (2009).

Having a trained dog sniff the perimeter of a vehicle that has been lawfully stopped in a public space is not a search for purposes of Fourth Amendment analysis. United States v. Place, 462 U.S. 696, 707 (1983). However, an "alert" by a trained narcotics dog constitutes probable cause for a search. United States v. Jeffus, 22 F.3d 554, 557 (4th Cir. 1994). Such a canine sniff, even if the K-9 Unit is called to the scene of a routine traffic stop, is "constitutionally acceptable if performed within 'the time reasonably required' to issue a traffic citation." Branch, 537 F.3d at 335. The Fourth Circuit has specifically held that a fifteen minute time period between a traffic stop and a search of the vehicle based upon probable cause from an "alert" by a trained narcotics dog "[does] not constitute an unlawful seizure in violation of the Fourth Amendment." Jeffus, 22 F.3d at 557.

Additionally, under the "automobile exception" to the Fourth Amendment's warrant requirement, once probable cause to search a vehicle that is readily mobile has been established, police officers may conduct a warrantless search of the vehicle. Maryland v.

Dyson, 527 U.S. 465 (1999). Such a warrantless search may be "as thorough as a magistrate judge could authorize in a warrant 'particularly describing the place to be searched.'" United States v. Ross, 456 U.S. 798, 800 (1982). This includes a search of any compartments or containers in the vehicle. Wyoming v. Houghton, 526 U.S. 295, 302, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999).

In circumstances where a search has exceeded its scope, seized items can still be admissible under the "inevitable discovery rule" if that evidence would have ultimately been discovered notwithstanding the constitutional violation. Nix v. Williams, 467 U.S. 431 (1984). Vehicle inventory searches of cars that have been impounded by the police are a recognized exception to the Fourth Amendment warrant requirement. See Florida v. Wells, 495 U.S. 1 (1990). This exception extends to closed containers inside the vehicle that are opened pursuant to a policy mandating the opening of such containers. Id. at 4. In addition, the Supreme Court of the United States has recognized that discretionary opening of a closed container in certain circumstances, including instances where the officer cannot determine the contents of the container from its exterior, is also constitutionally acceptable. Id.

Therefore, an arresting officer is not liable for false arrest, under 42 U.S.C. § 1983, where the arrest is supported by probable cause and the arrest is based upon the violation of a presumptively valid statutory provision. See DeFillippo, 443 U.S. at 36; Pierson v. Ray, 386 U.S. 547, 557 (1967) ("[T]he defense of good faith and probable cause . . . available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under § 1983.").

Crucially, even if Defendants' conduct violated Plaintiff's Fourth Amendment right, Defendants are not automatically liable under § 1983 or in tort for their subsequent decisions to place Plaintiff under arrest. Contrary to Plaintiff's assumption and assertion, there is no fruit of the poisonous tree doctrine in the § 1983 context that makes Defendants necessarily liable for a seizure that came after a potentially unlawful search. The fruit of the poisonous tree doctrine is merely an extension of the exclusionary rule, see Segura v. United States, 468 U.S. 796, 804 (1984), and as such generally operates "only in criminal trials." Pa. Bd. of Probation & Parole v. Scott, 524 U.S. 357, 364 n.4 (1998). Consequently, "[v]ictims of unreasonable searches . . . may recover damages directly related to the invasion of their privacy . . . but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." Townes v. City of New York, 176 F.3d 138, 148 (2d Cir. 1999).

In short, even if Defendants' seizures and searches were unlawful, that fact in itself does not preclude Defendants from arguing in this case that they had sufficient probable cause to arrest Plaintiff, such that Plaintiff's false arrest and/or malicious prosecution claim/s should be dismissed. See Guerrero v. Deane, 750 F. Supp. 2d 631, 652 (E.D. Va. 2010) (noting, in a § 1983 case, that the lawfulness of an entry is a separate question from the lawfulness of a subsequent seizure).

"The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." Townes v. City of New York, 176 F.3d 138, 148 (2d Cir.1999). A plaintiff may not recover for injuries flowing "from the discovery of

incriminating evidence and [the] consequent criminal prosecution," but only those "directly related to the invasion of their privacy," including "where appropriate" damages for physical injury, property damage, or injury to their reputation." Id.

In other words, a plaintiff asserting a claim of unreasonable search and seizure under § 1983 "may recover damages directly related to the invasion of [his] privacy . . . but . . . cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." Id.  Having reviewed the motions for summary judgment, actually all of the pleadings and the entire record, it is clear that, Plaintiff has alleged no damages related to the invasion of this privacy, but has exclusively alleged injuries that resulted from the discovery of incriminating evidence and his consequent criminal prosecution, which are not recoverable under as claim of unreasonable search and seizure.  There is no evidence, nor can it be reasonably inferred, that any recoverable damages resulted from the searches themselves.

Furthermore, following the allegedly unlawful searches, warrantless arrests allegedly without probable cause, issuance of arrest warrants allegedly in the absence of probable cause, and the dismissal of the arrest warrants at a preliminary hearing allegedly based on lack of probable cause, Plaintiff alleges that the Anderson County Solicitor's Office elected to proceed with an indictment of Plaintiff on the June 7, 2011 drug possession charge.  This direct indictment by the Solicitor's Office provided a break in the chain of causation between the Defendants' purportedly unlawful searches and arrests and Plaintiff's prosecution, even if the prosecution could not have happened without the fruits of the

searches.[12]  See Townes, 176 F.3d at 147 (noting that even if the unlawful search was the "but for" cause of law enforcement's discovery of incriminating evidence, "the trial court's failure to suppress the evidence . . . constituted a superseding cause of Townes's conviction and imprisonment" (emphasis omitted)); see also Wray v. City of New York, 490 F.3d 189, 193 (2d Cir.2007) (holding that "in the absence of evidence" that the law enforcement officials had "misled or pressured the prosecution or trial judge," the chain of causation between the unlawful conduct and conviction was broken by "the ill-considered acts and decisions of the prosecutor and trial judge").  Accordingly, as Plaintiff has not pled or proven any actionable injury based on either alleged unlawful search, this claim should be dismissed.

**Defendants' Summary Judgment Motion Should be Granted as to Plaintiff's False Arrest and/or Malicious Prosecution Claims**

Between his Amended Complaint, his Motion for Summary Judgment, and his responses to Defendants' Motion for Summary Judgment, Plaintiff appears to plead both a claim for false arrest and malicious prosecution, pursuant to 42 U.S.C. § 1983 and possibly state law.  A claim that a warrantless arrest is not supported by probable cause constitutes a cause of action for false arrest as opposed to malicious prosecution.  See Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir.1996).  Whether an independent cause of action for malicious prosecution under § 1983 even exists is a

---

[12]  "[I]t is well settled that a plaintiff asserting a constitutional tort under § 1983 . . . must, like any tort plaintiff, satisfy the element of proximate causation."  Adams v. Parsons, No. 2:10-CV-0423, 2011 U.S. Dist. LEXIS 41834, 2011 WL 1464856, at *5 (S.D.W. Va. Apr. 15, 2011) (discussing a Rule 12(b)(6) motion to dismiss a Fourth Amendment malicious prosecution claim); see Blue v. Bigos, 89 F.3d 827 (4th Cir. 1996) (per curiam) (unpublished table decision) ("[P]roximate cause is part of a § 1983 plaintiff's burden." (citing Shaw v. Stroud, 13 F.3d 791, 798-99 (4th Cir. 1994))).

question that has, for quite some time, confronted the federal courts.  See, e.g., Wallace v. Kato, 549 U.S. 384, 390 n.2 (2007) ("We have never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983, and we do not do so here.") (citation omitted).  Recently, in Snider v. Seung Lee, 584 F.3d 193 (4th Cir. 2009), the Fourth Circuit summarized its understanding of the law surrounding such a claim:

> While it is not entirely clear whether the Constitution recognizes a separate constitutional right to be free from malicious prosecution, see Albright v. Oliver, 510 U.S. 266, 279-80 n. 5 (1994) (Ginsburg, J., concurring); Lambert v. Williams, 223 F.3d 257, 261-62 (4th Cir. 2000), if there is such a right, the plaintiff must demonstrate both an unreasonable seizure and a favorable termination of the criminal proceeding flowing from the seizure. In Lambert we explained:
>
>> Our analysis in Brooks [v. City of Winston-Salem, 85 F.3d 178 (4th Cir. 1996)], understood in light of these precedents, makes clear that there is no such thing as a "§ 1983 malicious prosecution" claim.  What we termed a "malicious prosecution" claim in Brooks is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution – specifically, the requirement that the prior proceeding terminate favorably to the plaintiff.
>
> 223 F.3d at 262.  In a footnote, we explained the significance of the second element of a malicious prosecution claim:
>
>> As we noted in Brooks, the significance of the favorable termination element is not only that it constitutes a prerequisite for recovery, but also that it establishes the time from which the claim accrues for purposes of determining whether the statute of limitations has run.
>
> Id. at 262 n.3 (emphasis added).

Snider, 584 F.3d at 199.

As detailed above, Plaintiff has failed to demonstrate that any genuine factual dispute exists as to the reasonableness of Defendants' searches and seizures.  Therefore,

34

in the absence of an unreasonable seizure, Plaintiff's claims of false arrest and/or malicious prosecution fail as a matter of law.

Additionally, while Plaintiff alleges that the charges against him were dismissed and the Anderson County Tenth Judicial Circuit Public Index confirms that the charges were ended by nolle prosequi, Plaintiff has not satisfied the second element of a malicious prosecution claim, i.e. that the prior proceeding terminated favorably to the plaintiff under circumstances which imply or are consistent with the innocence of the accused.  See Campbell v. Smith, 2009 U.S. Dist. LEXIS 103247 at *18-20 (D.S.C. , Oct. 1, 2009), affirmed by, summary judgment granted by, dismissed by 2009 U.S. Dist. LEXIS 103137 (D.S.C. Nov. 4, 2009); Medows, 2008 U.S. Dist. LEXIS 112487 at *9 (D.S.C. Feb. 28, 2008) adopted by, objection overruled by, summary judgment granted by 2008 U.S. Dist. LEXIS 52936 (D.S.C. June 24, 2008).  Other than Plaintiff's own conclusory statement in his Notice of Change of Address that the charges were dismissed based on lack of probable cause, there is no evidence to show why the charges were nolle prossed. Defendants' allegations that Whitfield and Hunnicutt are no longer employed by the Anderson County Sheriff's Department make it equally plausible that the charges involved in this case were nolle prossed due to the unavailability of the arresting officers.  In any event, the fact that Plaintiff has not satisfied the first element of a malicious prosecution claim regarding an unreasonable seizure is fatal to Plaintiff's Amended Complaint.


**Defendants' Summary Judgment Motion Should be Granted as to Plaintiff's Damages Claims Against Defendants in their Official Capacity**

Defendants argue that, as state officers, they are entitled to Eleventh Amendment immunity. See Will v. Michigan Department of State Police, 491 U.S. 58 (1989). In Gulledge v. Smart, 691 F. Supp. 947 (D.S.C. 1988), aff'd mem., 878 F.2d 379 (4th Cir. 1989)[Table], the court addressed whether South Carolina sheriffs were state or county officials. The court applied South Carolina common law principles of the master and servant relationship and concluded that sheriffs are state officials. Id. at 954-955. The Fourth Circuit concluded, in Cromer v. Brown, 88 F.3d 1315 (4th Cir. 1996), that the Greenville County sheriff, in his capacity as a state official, was immune from suit for monetary damages under § 1983. Id. at 1332. Further, in Gulledge, the district court concluded that deputy sheriffs are agents of the sheriff and therefore under state, not county, control. Gulledge, supra; see also Heath v. Aiken County, 295 S.C. 416, 368 S.E.2d 904 (S.C. 1988). In Cone v. Nettles, 308 S.C. 109, 417 S.E.2d 523 (S.C. 1992), the South Carolina Supreme Court cited Gulledge with approval and specifically held that South Carolina sheriffs and their deputies are state officials for § 1983 purposes. Thus, Defendants are entitled to Eleventh Amendment immunity from Plaintiff's claims for monetary damages in their official capacity.

**It is Unnecessary to Consider Defendants' Qualified Immunity Defense**

Having found that Plaintiff has not raised a viable § 1983 claim, the Court need not determine whether any rights Plaintiff has asserted were "clearly established" for purposes of qualified immunity. See DiMeglio v. Haines, 45 F.3d 790, 799 (4th Cir.1995) ("In many cases where a defendant has asserted qualified immunity, dismissal or even an award of summary judgment may be obviously warranted, based upon existing law, without the court ever ruling on the qualified immunity question."); Gordon v. Kidd, 971 F.2d 1087, 1093 (4th

36

Cir.1992) ("In analyzing the appeal of a denial of summary judgment on qualified immunity grounds, it is necessary first to identify the specific constitutional right allegedly violated, then to inquire whether at the time of the alleged violation it was clearly established.").

**Plaintiff's State Law Claims Should be Dismissed**

Having recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's federal claims pursuant to 42 U.S.C. § 1983 be dismissed, the undersigned also recommends that the Court decline to exercise jurisdiction over whatever state law claims Plaintiff may have raised against Defendants. See 28 U.S.C. § 1367(c); see, e.g., Patterson v. City of Columbia, 2003 WL 23901761, at *5 (D.S.C. Dec 29, 2003) ("Patterson has raised various state law claims against all Defendants. Because the federal claims must be dismissed, the court declines to exercise jurisdiction over the remaining state law claims.").

**Plaintiff's Motion for Preliminary Injunction and Motion to Amend Motion for Preliminary Injunction Should be Denied**

As state court criminal proceedings were still pending against Plaintiff when he filed these motions, and in the absence of extraordinary circumstances, this Court was not authorized to interfere with the State of South Carolina's pending criminal proceedings. See Younger v. Harris, 401 U.S. 37, 44 (1971); Cinema Blue of Charlotte, Inc. v. Gilchrist, 887 F.2d 49, 50-53 (4th Cir.1989) (holding federal district courts should abstain from constitutional challenges to state judicial proceedings if the federal claims have been or could be presented in an ongoing state judicial proceeding). As Plaintiff's state criminal charges have been dismissed and Plaintiff has been released from custody, the relief

sought by Plaintiff is no longer available, thus Plaintiff's Motions are moot and should be denied.

**Plaintiff's Motion in Limine Should be Denied**

In his Motion in Limine (ECF No. 69), Plaintiff requests "that all records that ha[ve] been ordered expunged . . . be kept from the record of this action."  Plaintiff's Motion in Limine, ECF No. 69, p. 1-2.  Plaintiff attaches to his Motion a "Pre-Trial Motion to Suppress Evidence Pursuant to Fed. R. Crim. P. 12(b)(3) and 4th, 14th Amendment U.S. Const.," (ECF No. 69-2), in which he asks this Court "to suppress all evidence claimed to have been seized from the Plaintiff by Defendants C.S. Whitfield and M.W. Hunnicutt," (ECF No. 69-2, p. 1), arguing that the evidence is "the Fruit of the Poisonous Tree." Id., p. 3.  Plaintiff also filed "Plaintiff's Pre-Trial Objection To Hearsay Testimony, 6th & 14th Amend. U.S. Const." (ECF No. 70) to which he attached the Supplementary Report, dated 06/07/11 (ECF No. 70, p. 4) of Deputy Hunnicutt, which Plaintiff states was provided to him by defendants in response to Plaintiff's discovery request.

This Court has previously considered Plaintiff's contention concerning the expungement of his April 1, 2011 arrest records and their use in this case, and ruled that it is misplaced.[13]  Furthermore, Plaintiff's reliance on criminal rules of evidence in this civil action is also misplaced.  Accordingly, Plaintiff's Motion in Limine (ECF No. 69) should be denied.

---

[13] See Order (ECF No. 79, p. 3-4), in the instant case, in which Judge Gergel rejected Plaintiff's argument.

## CONCLUSION

Wherefore, it is RECOMMENDED that Plaintiff's Motion for Summary Judgment (ECF No. 52) be DENIED, and that Defendants' Motion for Summary Judgment (ECF No. 82) be GRANTED.  It is further RECOMMENDED that Plaintiff's Motion for Preliminary Injunction (ECF No. 13), Motion to Amend Motion for Preliminary Injunction (ECF No. 37), and Motion in Limine  (ECF No. 69) be DENIED.

IT IS SO RECOMMENDED.


July 30, 2013                                        s/Bruce H. Hendricks
Charleston, South Carolina                          United States Magistrate Judge



**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).